THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD HOWARD, Defendant-Appellant.

Second District   No. 2—84—0393

Opinion filed December 19, 1985.

Daniel D. Yuhas and John J. Hanlon, both of State Appellate Defender's Office, of Springfield, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of Elgin, Robert J. Biderman and Kevin T. McClain, both of State's Attorneys Appellate Service Commission, of Springfield, and Peter M. Tumminaro, of State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

On April 12, 1984, after a jury trial in the circuit court of Winnebago County, the defendant, Reginald Howard, was found guilty of murder, not guilty of voluntary manslaughter, and was sentenced to a term of 20 years' incarceration. On appeal defendant argues: (1) that the trial court erred in admitting his confession into evidence; (2) that his conviction should be reduced to voluntary manslaughter; (3) that the jury instructions were insufficient; and (4) that he was denied a fair trial by the prosecutor's closing argument.

At approximately 3 p.m. on August 3, 1983, Turina Cochran and Jackie Hill met the deceased, Freddie Peterson, in front of "Mary's house" at 1008 Loomis Street in Rockford. Mary was a friend of Hill's and Hill and Cochran were planning to stay there. Cochran, Hill, Peterson and Peterson's brother, Steve, then went to Peterson's house where Peterson drank "a lot" and at one point struck Cochran. At approximately midnight Peterson walked Cochran and Hill back to Mary's house. After the three had been at Mary's house for awhile the defendant arrived and was introduced to Peterson.

While the four of them were at Mary's house, Cochran told Peterson that defendant was her boyfriend. Cochran also told defendant that Peterson had struck her earlier. Thereafter Peterson walked from the front porch to defendant's bicycle and punctured one of its tires with his knife. There is conflicting testimony as to whether Peterson punctured the tire because he was jealous that defendant was Cochran's boyfriend or because defendant refused to let Peterson use the bike to go to a "dope house." After he punctured the tire Peterson asked defendant, "are we cool, man?", to which defendant replied, "yeah man, we cool." In Cochran's view, while defendant did not seem upset or angry after learning that Peterson had struck her, defendant did appear upset after this incident.

Peterson and Hill then began to leave the area walking towards Hill's house to use the phone there. As they did so, two of defendant's friends, Vincent Banks and Dexter Richardson, drove up, got out of their car and spoke with defendant. Defendant then yelled to Peterson, "punk, you got yours coming," and said loudly to Banks and Richardson, "we gonna kick his ass." Peterson then returned to Mary's house and appeared angry. Hill told the three men to leave Peterson alone because he was drunk and didn't know what he was doing, but defendant said no and repeated that he was going to "kick his ass." Richardson also stated, "No, we gonna get him."

When Peterson returned to Mary's he stood on the bottom step of the porch and Banks and Richardson stood on either side of him.

Defendant then walked up the steps, got behind Peterson, and took the knife from Peterson's back pocket. Defendant then opened the knife, waved it in Peterson's face and said, "[w]hat you gonna do now, mother fucker, what you gonna do now." Peterson jumped off the porch and backed up as the defendant came at him with the knife. Peterson then struck defendant in the chest with the belt he was carrying in his hand and fled. When Peterson fled, defendant, Banks and Richardson ran after him. Defendant caught up with Peterson and stabbed him in the back. Peterson slowed down after being stabbed and the three men overtook him. Banks and Richardson then held Peterson's arms as defendant stabbed him twice more in the chest. Defendant returned to Mary's house, called Cochran a "bitch," and told Hill that the same thing was going to happen to her if she reported what she saw. Defendant then left with Banks and Richardson in their car.

At approximately 5 p.m. on August 4, defendant turned himself in at the Rockford Police Department. Defendant made three statements to Officers Foltz and Murphy. Only his first statement, which was reduced to writing, was introduced at trial. Defendant told the officers that Peterson struck him on the upper arm with the belt. Both officers examined defendant's arm and neither saw any mark there.

Defendant's first contention is that his statement should have been suppressed as an involuntary confession because it was given after a promise of leniency. At the suppression hearing, defendant testified that the police promised that "if [he] told the truth that everything would go right on [him] and stuff like that." Defendant argues that this statement can only be interpreted as an implicit promise that the police would recommend less serious charges, the imposition of a minimum sentence or some other extremely important legal benefit.

■■ ■ Whether a statement was voluntarily given depends upon the totality of the circumstances. The test is whether it was made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Confessions induced by promises or suggestions of leniency have been held involuntary. (*People v. Heide* (1922), 302 Ill. 624; *People v. Ruegger* (1975), 32 Ill. App. 3d 765; *People v. Peck* (1974), 18 Ill. App. 3d 112.) However, mere exhortations to tell the truth or to make a statement do not, without more, render a subsequent confession inadmissible. *People v. Wipfler* (1977), 68 Ill. 2d 158; *People v. Taylor* (1974), 58 Ill. 2d 69.

In *People v. McGuire* (1968), 39 Ill. 2d 244, 250, *cert. denied*

(1968), 393 U.S. 884, 21 L. Ed. 2d 160, 89 S. Ct. 193, the court held that the police officer's statement that "it would be better" for the defendant if he gave a statement did not constitute a sufficient inducement or promise of leniency to render the defendant's confession involuntary. Similarly, in *People v. Hartgraves* (1964), 31 Ill. 2d 375, 381, *cert. denied* (1965), 380 U.S. 961, 14 L. Ed. 2d 152, 85 S. Ct. 1104, the court held that the police officer's statement that "[i]t would go easier for [the defendant] in court if he made a statement" was in no way a direct promise of leniency and did not render the defendant's confession involuntary. (See also *People v. Stevens* (1981), 98 Ill. App. 3d 158; *People v. Dozier* (1979), 67 Ill. App. 3d 611.) Both *McGuire* and *Hartgraves* relied upon *People v. Pugh* (1951), 409 Ill. 584, where the court stated:

> " 'In other cases it has been held that telling a prisoner that it would be better for him to tell the truth is not the offering of an inducement to him to confess or the making of a threat for that purpose. [Citations.] These decisions seem to have the better reason. It is not reasonable to suppose that advice to one accused of crime that it is better for him to tell the truth would of itself be an inducement to him to tell an untruth or would alone be a sufficient inducement to make a statement falsely confessing crime. Mere exhortation to tell the truth will not make a confession afterward made, inadmissible, but the statement that it is better to tell the truth may be made under such circumstances as to make a confession afterwards made incompetent. If there is coupled with the advice a suggestion of a benefit in the particular case, a confession by reason of such advice and suggestion is incompetent.' " *People v. Pugh* (1951), 409 Ill. 584, 595, quoting *People v. Klyczek* (1923), 307 Ill. 150, 154.

In the present case, the officer's alleged statement, that things would "go right" for defendant if he told the truth, was the equivalent to a statement that it would be better for him to tell the truth. Therefore, in view of the foregoing analysis, we hold that the trial court did not err in admitting defendant's confession into evidence.

Defendant's second contention is that his conviction should be reduced to voluntary manslaughter because the evidence showed that he stabbed the deceased while under a sudden and intense passion caused by the decedent's actions of taunting him, striking his girl friend, puncturing his bicycle tire and striking him with a belt. Defendant admits that being struck by the belt is the only act that

could arguably be considered legally sufficient provocation to reduce his conviction to voluntary manslaughter, but argues that his failure to fight earlier shows that he was not looking for a fight and that his reaction to being struck with a belt was all the more reasonable.

■■ ■ It is fundamental that where there is conflicting evidence, it is for the trier of fact to determine whether a homicide is murder or manslaughter. (*People v. Miller* (1981), 96 Ill. App. 3d 212.) A reviewing court will not disturb a finding of guilty unless it is so improbable, unreasonable or unsatisfactory, as to raise a reasonable doubt as to the guilt of the defendant. (*People v. Evans* (1981), 92 Ill. App. 3d 874.) In the present case, we find no reason to disturb the jury's determination that defendant stabbed the deceased without sufficient provocation to reduce the offense from murder to voluntary manslaughter.

A review of the evidence shows that defendant did not respond to the earlier acts of provocation (deceased striking his girl friend and puncturing his bicycle tire) until Banks and Richardson arrived and he spoke with them. Then, as the deceased was leaving the area, defendant taunted and threatened him until he returned to the scene. When the deceased returned, defendant took a knife from the decedent's back pocket and, with his friends standing next to the decedent, defendant waved it in his face. The deceased, now confronted with three men threatening him and waving a knife in his face, backed away, struck defendant with his belt and then ran away. The three men chased the decedent for two blocks, caught him, and defendant stabbed him to death.

Defendant's actions in this case of initiating the second and fatal confrontation after his two friends arrived, in taking the decedent's knife and waving it in his face, and in chasing him for two blocks before killing him "bespeak deliberation and malice indicative of the *mens rea* necessary for a murder conviction." (*People v. Miller* (1981), 96 Ill. App. 3d 212, 215.) Based on this evidence the jury could have found the killing attributable to deliberate revenge for the decedent's earlier actions. (*People v. Clark* (1973), 15 Ill. App. 3d 756.) Further, defendant's argument that he was provoked only after the decedent struck him with a belt ignores the fact that it was he who, after his two friends arrived and while the decedent was walking away, initiated the second and fatal confrontation. The law does not allow one who initiates combat to rely on it to mitigate his offense from murder to manslaughter. *People v. Causey* (1978), 66 Ill. App. 3d 12.

■■ Defendant's next contention is that he was deprived of a proper jury determination of the extent of his criminal liability be-

cause the trial court failed to include, in the issues instruction on murder, the requirement that the State negate his partial defense that he was acting under a sudden and intense passion resulting from serious provocation by the victim. Defendant concedes that he waived this argument in failing to object to the given instructions or in tendering instructions which would be consistent with the instructions which he now argues were essential (*People v. Smith* (1978), 71 Ill. 2d 95), but argues that the failure to so instruct should be considered plain error under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)) or Supreme Court Rule 451(c) (87 Ill. 2d R. 451(c)).

We find *People v. Perez* (1981), 100 Ill. App. 3d 901, dispositive of this issue. In *Perez,* as in the present case, the defendant argued that the jury should have been instructed that the burden was on the State to negate the elements which would lead to a verdict of voluntary manslaughter even though he did not object to jury instructions at trial. In *Perez,* the defendant argued that he was acting under an unreasonable belief of self-defense. The court rejected his argument, stating:

> "In the instant case the jury returned a not-guilty verdict on the voluntary manslaughter charge and a guilty verdict on the murder charge. Obviously, the jury did not believe that the defendant possessed any belief, reasonable or unreasonable, that circumstances existed which would have justified the use of the force which he used. Thus, the omission of the fourth proposition of instruction No. 27.01 did not affect the jury's deliberation on the issue of murder. Therefore, we cannot say that the omission of the fourth proposition of the murder instruction gave rise to plain error." 100 Ill. App. 3d 901, 908.

Similarly, in the present case the jury returned a not-guilty verdict on the voluntary manslaughter charge and a guilty verdict on the murder charge, making it clear that they did not believe that defendant was acting under an intense passion at the time of the stabbing. Thus, we cannot say that the omission of the language now requested by defendant rises to the level of plain error. See also *People v. Bolden* (1985), 132 Ill. App. 3d 1047; *People v. Middleswart* (1984), 124 Ill. App. 3d 35; *People v. McGee* (1982), 110 Ill. App. 3d 766; *People v. Vega* (1982), 107 Ill. App. 3d 289.

■ Defendant's last contention is that the prosecutor's statement that the State's burden of proof lasted only until the time when the jury began its deliberations denied him a fair trial. During the rebuttal portion of the State's closing argument the following exchange took place:

762

"PROSECUTOR: The burden of proof is on the people in this case, and it started with us, and up until the point when you start deliberating it remains with us.

DEFENSE COUNSEL: Judge, I object to that. The burden's throughout the deliberations until they reach a verdict.

THE COURT: Objection overruled.

PROSECUTOR: And the burden of proof, it is our burden of proof beyond a reasonable doubt. And when you think of a reasonable doubt, you think of that testimony you hear during the course of this trial."

The State correctly notes, however, that defendant did not raise this issue in his post-trial motion.

We note initially that there is a conflict of authority within our appellate courts as to whether an issue is properly preserved for appeal merely by objection at trial or whether the issue must also be included in the post-trial motion. (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 220-21.) This court has consistently held that an alleged error must be both objected to at trial and noted in the post-trial motion. (*People v. Bailey* (1985), 132 Ill. App. 3d 399; *People v. Winston* (1982), 106 Ill. App. 3d 673; *People v. Andino* (1981), 99 Ill. App. 3d 952; *People v. Lundblade* (1981), 95 Ill. App. 3d 474; *People v. Pallardy* (1981), 93 Ill. App. 3d 725.) We find, therefore, that defendant has waived this issue on appeal.

When a claim of error has not been so preserved, it will only be considered by a reviewing court under the plain error doctrine set forth in Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)). The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. (*People v. Lucas* (1981), 88 Ill. 2d 245, 251.) Where a prosecutor incorrectly states in closing argument that the presumption of innocence does not remain with the defendant during the jury's deliberations, the defendant is not denied a fair trial if the jury is thereafter properly instructed by the court on the presumption of innocence and the burden of proof. (*People v. Viser* (1975), 62 Ill. 2d 568, 586.) In the present case, the jury was properly instructed and defendant, therefore, was not denied a fair trial.

For the reasons stated herein, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

UNVERZAGT and STROUSE, JJ., concur.