THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY WEBB, Defendant-Appellant.

Fifth District   No. 5—86—0016

Opinion filed April 13, 1987.

1056

KARNS, P.J., dissenting.

Edward J. Kionka, of Murphysboro, and Brocton, Lockwood, Winters & Garrison, of Marion, for appellant.

Charles Garnati, State's Attorney, of Marion (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Following a jury trial in Williamson County, defendant Larry Webb was found guilty of criminal sexual assault. (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(3).) On appeal, defendant argues that the trial court erred in allowing the State to present evidence of defendant's confession because the State failed to present sufficient independent corroborating evidence that the crime had been committed. We affirm.

The following facts were adduced at trial. On June 24, 1985, at 8:50 p.m., the Illinois Department of Children and Family Services (DCFS) received a tip from an undisclosed source on its Springfield hotline that defendant was sexually abusing his 13-year-old daughter Melissa. The DCFS agents had 24 hours to respond to the call with a face-to-face investigation. The following day, DCFS supervisor Sue Selock and investigator Nancy Sorrels visited defendant at his home. At that time, defendant was at home with his two children from a previous marriage, Melissa and Michael. Upon arrival, the agents identified themselves and explained their visit to defendant. They also handed defendant a formal notification letter. Defendant agreed to talk to Selock and to allow the children to be interviewed by Sorrels.

Selock talked to defendant in her car. Initially, defendant denied having had sexual relations with his daughter. Selock then informed him of the hotline report which said that he would take Melissa into his bedroom, undress her, lie down on top of her, and have sexual intercourse with her. Defendant again denied the allegation but asked if the matter would be dropped if he admitted the charge. Selock replied no, but before she could elaborate on the response, defendant admitted that he had sexual relations with Melissa on June 24, 1985. Selock

stated that defendant agreed to make a statement. She then wrote down what defendant said and then he signed it.

Melissa was then taken to the emergency room at Marion Memorial Hospital and examined by Dr. Urduja Pulido, an obstetrician and gynecologist. Dr. Pulido performed a detailed examination of Melissa's head, neck, breasts, chest, abdomen, legs and pelvic area. Dr. Pulido found no external injuries but observed black and blue marks around the area of the vagina and also observed a small amount of white, milky fluid near her vaginal opening. Dr. Pulido would not speculate regarding the cause of the bruises around the pelvic area. A sample of the milky fluid was taken and analyzed. The test results did not detect any sperm or semen. Dr. Pulido stated that if intercourse had occurred earlier in the day she would have expected to find dead sperm. A blood test for venereal disease and a pregnancy test returned negative.

During Dr. Pulido's examination of Melissa's vagina, she found the hymen intact and not torn. She did find the hymen to be stretched but did not find any evidence of injury that would indicate penetration. However, in her experience, she also stated that she would not expect to be able to insert one finger into the vagina of a 13-year-old girl but, in this case, she was able to insert one finger "slightly easier than the usual." She could not give an opinion regarding whether Melissa had been abused. In her opinion, it was unlikely that the hymen would remain intact if intercourse had occurred and it was also unlikely that no sperm would be present after intercourse.

After Selock's interview with defendant, she arranged for Detective Robert McCluskey to interview defendant. However, defendant did not want to see Detective McCluskey. He went later that afternoon to the Williamson County sheriff's office and met with Sheriff Harry Spiller. Defendant told Sheriff Spiller that he was in trouble and asked to talk to him. Sheriff Spiller took defendant into his office. In response to Sheriff Spiller's questions regarding his problem, defendant explained to Spiller about the DCFS investigation. Defendant told Sheriff Spiller that he thought Melissa had called the DCFS hotline and that he did not know what was wrong with him but that he had had sexual relations with his daughter. At that time, Sheriff Spiller told defendant to "shut up" because the police had not read him his rights. Sheriff Spiller then went to find Detective McCluskey.

Detective McCluskey came to the sheriff's office and soon thereafter informed defendant of his *Miranda* rights. He then asked defendant to sign a waiver of rights form. After defendant complied and signed the waiver form, he confessed to having had sexual contact

with Melissa on June 24. Defendant told Detective McCluskey that while he was in the living room, Melissa entered wearing a nightgown. He then took her into his bedroom, got in bed, undressed, and had intercourse with her. At Detective McCluskey's request, defendant dictated a written statement. After defendant read the statement over, he signed it.

The victim of the crime, Melissa, was living with her mother at the time of trial. Although she had been subpoenaed to testify, she did not appear. The State informed the court that it had decided not to call Melissa in order to prevent her from suffering the trauma of relating the story again.

Prior to the introduction of any evidence of defendant's statement, the trial court heard arguments outside the presence of the jury regarding whether enough evidence of the *corpus delicti* had been presented to allow evidence of defendant's confessions. The trial court ruled that the statements were admissible. At the close of the trial, the jury returned a verdict of guilty. From this verdict, defendant appeals.

Defendant's one and only issue on appeal is whether the trial court erred in finding sufficient evidence of the *corpus delicti*, independent of his statements, to permit submission of the case to the jury. This court finds that there was and, accordingly, affirms defendant's conviction.

■ The *corpus delicti* is the body or substance of the crime, which ordinarily includes the act and the criminal agency. (*People v. Lambert* (1984), 104 Ill. 2d 375, 378, 472 N.E.2d 427, 428.) As the court stated in *People v. Lambert,* in order to establish the *corpus delicti*: "There must be either some independent evidence or corroborating evidence outside of the confession which *tends* to establish that a crime occurred. [Citations.] If there is such evidence, and that evidence *tends* to prove that the offense occurred, then that evidence, if it corroborates the facts contained in the defendant's confession, may be considered together with the confession to establish the *corpus delicti.*" (Emphasis added.) (104 Ill. 2d 375, 378-79, 472 N.E.2d 427, 428-29.) Further, the corroborating evidence need not establish the *corpus delicti* independent of the confession and need not be direct and positive evidence. (*People v. Lueder* (1954), 3 Ill. 2d 487, 488, 121 N.E.2d 743, 744.) The test for basing a conviction on a confession is whether the independent evidence shows that a crime did occur, although the evidence need not establish that fact beyond a reasonable doubt, and whether the independent evidence corroborates or bolsters the circumstances of the confession. (*People v. Turner* (1984), 127 Ill.

App. 3d 784, 789, 469 N.E.2d 368, 372.) When the test is satisfied, both the independent evidence and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved. 127 Ill. App. 3d 784, 469 N.E.2d 368.

In this case, defendant's confession that he had sexual intercourse with his daughter was corroborated by the testimony of the examining physician that (1) she was able to insert her finger into the 13-year-old girl's vagina more easily than usual, (2) the girl's hymen was "stretched out," and (3) there were black and blue marks around the opening of her vagina.

The examining physician's observations were consistent with the fact that the child had had intercourse. First, evidence that the girl's vagina opened more easily than usual to accommodate the physician's finger was a sign that she had been penetrated. Second, the black and blue marks around the girl's vagina indicated not only that she had had intercourse but that she had done so recently. These are the types of marks that one could be expected to find after an adult male has lain on top of a 13-year-old girl for about 10 minutes. Also, since bruises dissipate with time, and the bruises observed were "black and blue," their presence tended to establish that the sexual contact was recent. The coloration of the bruises corroborated defendant's statement that the intercourse occurred the day before his daughter's examination.

Although the evidence does not establish intercourse independent of the confession, the evidence did substantiate the confession. It has been held that corroborating facts need not prove the *corpus delicti* independent of confession. (*People v. Lueder* (1954), 3 Ill. 2d 487, 488, 121 N.E.2d 743, 744.) Thus, in determining whether intercourse was established by evidence apart from the confession, the court could consider such evidence in light of the confession.

■ It is well established that the corroboration requirement is to assure the truthfulness of the confession and recognizes that the reliability of a confession " 'may be suspect if it is extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past.' " [Citations.] (*People v. Willingham* (1982), 89 Ill. 2d 352, 359, 432 N.E.2d 861, 864.) Corroboration is necessary to avoid an untrue confession, which may be given to gain publicity, to shield another, to avoid apparent peril, or for other reasons. (*People v. O'Neil* (1960), 18 Ill. 2d 461, 464, 165 N.E.2d 319, 321.)

■ The corroborating evidence in this case tends to validate the defendant's confession and to dispel the possibility that it was fabri-

cated for any reason. It is unlikely that if defendant had confessed to having had intercourse with his 13-year-old daughter, she would just happen to have a "stretched out" hymen, as well as bruises on her vagina. Moreover, other factors support the trustworthiness of the three confessions. His first confession to the DCFS investigator was at his home. Later that afternoon, he spontaneously confessed to Sheriff Spiller, an acquaintance, who immediately cautioned defendant not to say anything. He then confessed a third time to Detective Mc-Cluskey after his *Miranda* rights were read to him. Furthermore, this court finds that defendant's confessions were not the result of police "grilling," that defendant was not attempting to protect anyone by confessing, and this situation does not attract "pathological confessors." Thus, the trial court properly ruled that the confession was sufficiently corroborated to warrant the submission of the case to the jury.

However, defendant argues that the examining physician stated that the fluid from the girl's vagina did not test positively for sperm or semen. Defendant's argument is without merit in review of his statement that he could not recall if he ejaculated. Further, the physician stated that the girl's stepmother informed her that the child had bathed in the interim, thus reducing the chances that sperm would be detected.

Defendant also argues that since the hymen was not torn, she could not have had intercourse. However, the physician stated that it was possible for the girl to have had intercourse without breaking her hymen.

Defendant also attempts to discount the significance of the bruises near the vagina. Defendant argues that these bruises could have been caused by other activities such as horseback riding. However, no evidence was presented at trial to have shown other possibilities for the bruises.

Defendant relies on *People v. Lambert* (1984), 104 Ill. 2d 375, 472 N.E.2d 427, in which the supreme court upheld the reversal of defendant's indecent-liberties conviction on the ground that defendant's confession was not sufficiently corroborated. However, *Lambert* is factually distinguishable from this case.

In *Lambert*, the independent evidence of the offense was (1) defendant's sleeping quarters were in the basement, (2) the young boy slept in the basement overnight, and (3) two to three weeks later, the young boy's rectum appeared pinkish and swollen. The court found that the State had failed to show any medical evidence to establish the possible causes for the condition of the boy's rectum. Further,

there was no evidence that the redness and swelling of the boy's rectum was caused by a criminal act because defendant's confession related to the fact that he fondled the boy's penis and buttocks and sucked on the boy's penis and defendant denied penetrating the boy's rectum. The supreme court found that the evidence did not sufficiently corroborate defendant's confession.

In this case, defendant's confession did correspond to the evidence and the passage of time adds to the evidence's probative value. The bruises near the girl's vagina, the looseness of her vagina, and the stretching of her hymen supported defendant's statement that he had intercourse with her. The discovery of the bruises and the observation of the condition of the girl's vagina occurred only one day after the defendant stated he had had intercourse with her. Thus, this court finds that the trial court found sufficient evidence of the *corpus delicti*, independent of defendant's statements, to permit submission of the case to the jury.

For the foregoing reasons, the finding of the circuit court of Williamson County is affirmed.

Affirmed.

JONES, J., concurs.

PRESIDING JUSTICE KARNS, dissenting:

The rule of law deriving from England and existing generally throughout the United States, as the majority acknowledges, is that a person cannot be convicted on his confession standing alone, unless corroborated by some independent evidence which tends to establish the occurrence of the crime. (*People v. Lambert* (1984), 104 Ill. 2d 375, 472 N.E.2d 427 (and cases therein cited).) Regardless of the circumstances under which a confession is given, and the apparent voluntariness, a suspicion of untrustworthiness remains without independent corroboration. We know that men confess to crimes they do not commit; perhaps in the case of sex crimes involving one's family, because of shame, the thought in the mind becomes the act, when in reality the act did not occur, or, as here, some lesser conduct may have occurred, as the testimony of Dr. Pulido cannot in my opinion be considered corroborative of sexual intercourse. See *People v. O'Neil* (1960), 18 Ill. 2d 461, 464, 165 N.E.2d 319, 321.

The majority has accurately described Dr. Pulido's findings, but she could not give an opinion that sexual intercourse had occurred. A fair reading of her testimony was that she found it unlikely consider-

1062

ing the absence of sperm and the fact that the hymen was intact. It seems apparent without the need for elaboration that the fact that a 13-year-old girl has a "stretched out" hymen does not "tend" to corroborate sexual intercourse. The findings and facts alluded to in the majority opinion cannot be considered corroborative when the opinion of the same witness was that she could give no positive opinion. Dr. Pulido was the only witness relied upon for corroboration. The corroboration in *Lambert* was more persuasive than that present here but the court found inadequate proof of the *corpus delicti*. The result in *Lambert* requires reversal here. In *Lambert*, the court declined to abandon the rule of law requiring traditional proof of the *corpus delicti*. We are bound to adhere to that holding.